IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JENISE MOIHA,<br><br>              Plaintiff,<br><br>    vs.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>              Defendant. | CIVIL NO. 21-00130 JAO-RT<br><br>ORDER AFFIRMING IN PART AND<br>REVERSING IN PART DECISION<br>OF COMMISSIONER OF SOCIAL<br>SECURITY AND REMANDING FOR<br>FURTHER PROCEEDINGS |

**ORDER AFFIRMING IN PART AND REVERSING IN PART
DECISION OF COMMISSIONER OF SOCIAL SECURITY AND
REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Jenise Moiha ("Plaintiff") appeals Defendant Kilolo Kijakazi,

Acting Commissioner of Social Security's ("Commissioner") denial of her

application for social security disability insurance benefits ("DIB").  She asks this

Court to reverse the Commissioner's decision, find her disabled as of January 15,

2013, and remand this case for an immediate payment of benefits.  *See* ECF No. 1.

At the Commissioner's request, and without objection from Plaintiff, the

Court decides this matter without a hearing.  ECF Nos. 23–24.  For the reasons that

follow, the Court AFFIRMS in part and REVERSES in part the Commissioner's

Decision and REMANDS this case for further administrative proceedings

consistent with this Order.

## ADMINISTRATIVE PROCEEDINGS

On September 19, 2017, Plaintiff applied for DIB and supplemental security income ("SSI").  ECF No. 14 (Administrative Record ("AR"));  AR at 16.[1]  The Social Security Administration denied her claim on February 27, 2018 and denied her request for reconsideration on November 30, 2018.  *Id.*

On August 4, 2020, the ALJ issued his Decision.  *Id.* at 26.  He determined that Plaintiff did not engage is substantial gainful activity from February 22, 2016 to December 31, 2017, her last date of insured.  *Id.* at 19.  He identified Plaintiff's severe impairments as:  "lumbosacral spondylosis without myelopathy; lumbar sprain/strain; morbid obesity; hypertension; [and] iron deficiency anemia."  *Id.* While acknowledging that Plaintiff has severe physical impairments, he concluded that the impairments — alone or combined — "do not meet the criteria of any listed impairments described in the *Listing of Impairments* in" 20 C.F.R., Subpart P, Appendix 1.  *Id.* at 20.

With respect to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally

---

[1]  When referencing the AR, the Court cites the pagination at the bottom of the page.  ECF citations reference the pagination supplied by CM/ECF in the page's header.

> engage in climbing stairs and ramps; she could occasionally engage in balancing, stooping, kneeling, or crouching; she could perform no crawling; she could have occasional exposure to hazardous machinery or unprotected heights; she could not climb ladders, ropes, or scaffolds.

*Id.* at 20.  The ALJ reached this determination by "consider[ing] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." *Id.*  He "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." *Id.*

The ALJ ultimately dismissed Plaintiff's DIB claim for the period January 15, 2013 through July 21, 2016 and concluded that Plaintiff was not disabled for the period July 22, 2016 through December 31, 2017, the date last insured.  *Id.* at 25.  The ALJ also dismissed and remanded Plaintiff's SSI claim.[2] *Id.*

The ALJ's Decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review of the dismissal and Decision.  *Id.* at 1–7.

## STANDARD OF REVIEW

An ALJ's denial of social security benefits will only be disturbed "'if the decision contains legal error or is not supported by substantial evidence.'" *Terry v.*

---

[2]  Plaintiff does not challenge the dismissal of her SSI claim.  ECF No. 22 at 10.

*Saul*, 998 F.3d 1010, 1012 (9th Cir. 2021) (quoting *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020)).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (internal quotation marks and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks and citation omitted).  If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed. *See Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." (internal quotation marks and citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## DISCUSSION

Plaintiff appeals the ALJ's determination that she is not disabled.  To be eligible for DIB, a claimant must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a claimant is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Only disabilities existing before the date last insured establish entitlement to disability insurance benefits.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims.

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is

capable of performing her past relevant work.  If so, the claimant
is not disabled.  If not, the ALJ proceeds to step five and
examines whether the claimant has the residual functional
capacity ("RFC") to perform any other substantial gainful
activity in the national economy.  If so, the claimant is not
disabled.  If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; *see* 20 C.F.R. § 404.1520.  It is the claimant's burden to

prove a disability in steps one through four of the analysis.  *See Burch*, 400 F.3d at

679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if

a claimant establishes an inability to continue [his] past work, the burden shifts to

the Commissioner in step five to show that the claimant can perform other

substantial gainful work."  *Id.* (citation omitted).

Plaintiff only challenges the ALJ's determinations as to steps four and five.

Plaintiff agrees with the ALJ's determination that she had no past relevant work,

but disagrees with the ALJ's RFC determination, asserting that it should be more

limited.  ECF No. 22 at 5.  Plaintiff also challenges the ALJ's conclusion that work

exists in significant numbers in the national economy that she can perform.  *Id.*

Plaintiff appeals the Decision on two grounds:  (1) the RFC was not based in

substantial evidence because the ALJ improperly assessed Plaintiff's credibility,

and (2) the ALJ erred in finding persuasive the medical consultants' opinions and

unpersuasive Plaintiff's treating physician's (Dr. Fred Brenner) opinion.  ECF No.

22 at 11–25.

## A.     The ALJ's Credibility Determination

Plaintiff argues that the ALJ erred by neglecting to address much of her hearing testimony and by failing to provide clear and convincing reasons for rejecting her symptom testimony.  *Id.* at 11–12.  "Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (internal quotations marks and citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  When the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, it is not the Court's role to second-guess the ALJ's decision.  *See Fair*, 885 F.2d at 604.  The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote omitted); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by regulation on other grounds* (identifying two-step analysis in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of symptoms); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). That said, the ALJ need not "'believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

Credibility determinations must be made with sufficiently specific findings to allow the court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The following factors are relevant in reviewing an ALJ's credibility findings, and are also required by the SSA:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes

8

> medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter*, 504 F.3d at 1040 (footnote and citations omitted); *see Orn*, 495 F.3d at 636 (ALJs may consider the following factors in weighing a claimant's credibility: "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" (quoting *Fair*, 885 F.2d at 603) (other citation omitted)).

The ALJ opined that although Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. AR at 21. The ALJ made no finding of malingering. *Id.*

Plaintiff argues that the credibility analysis is flawed because the ALJ selectively summarized her hearing testimony without discussing critical explanations or referencing her Adult Function Report ("AFR"). ECF No. 22 at 12; ECF No. 28 at 4. The ALJ stated:

> During the hearing, the claimant alleged pain that was so severe that she has trouble even with getting dressed or brushing her teeth. She stated that she has trouble with bending or twisting. The claimant reported that her lower back pain shoots into her legs. She also stated that she has numbness in her legs. In terms of activities, the claimant stated that she spends most of her time in a chair with a massager. She stated that she relies on

9

> a cane but cannot stand long enough to cook. She estimated that she could stand for only five minutes and sit for five minutes.

AR at 21. Not only did Plaintiff testify about the pain allegations and limitations detailed in the AFR, but the ALJ's summary also addresses them.[3] *Compare id.* at 21, 39–47, *with id.* at 220–27. The ALJ did not err merely because he failed to discuss all of Plaintiffs' testimony or the AFR.[4] *See Ferreira v. Saul*, Civil No. 19-00241 JAO-KJM, 2020 WL 1318789, at *6 (D. Haw. Mar. 20, 2020) ("An ALJ need not address every aspect of a claimant's testimony to find him not credible." (quoting *Vahey v. Saul*, Civ. No. 18-00350-ACK-KJM, 2019 WL 3763436, at *23 (D. Haw. Aug. 9, 2019))). As discussed below, the ALJ offered multiple bases for declining to fully credit Plaintiff's testimony about the severity of her symptoms; and these bases constitute specific, clear and convincing reasons to justify his

---

[3] For example, Plaintiff argues that her challenges with using the bathroom and dressing herself, and limited ability to cook microwavable meals and engage in social activities, were not discussed at the hearing. ECF No. 28 at 4. But Plaintiff testified about all of these issues and they are included in the summary. AR at 44–45 (Plaintiff's testimony discussing difficulty in the bathroom because she cannot bend or twist and efforts to cook microwavable meals due to her inability to stand for long periods of time).

[4] Even if this constituted error, it would be harmless because this evidence is cumulative of the evidence discussed by the ALJ. *Cf. Niemi v. Saul*, 829 F. App'x 831, 833 (9th Cir. 2020) ("Although the ALJ may have erred by failing to assess the medical evaluation from Dr. Michael Brown, that evaluation pre-dated the alleged onset of Niemi's disability by 18 months and was cumulative of the other medical evidence. Any error flowing from that omission was harmless." (citing *Molina*, 674 F.3d at 1111)).

adverse credibility determination. *See Trevizo*, 871 F.3d at 679 (citing *Lingenfelter*, 504 F.3d at 1036).

With respect to Plaintiff's complaints of pain, the ALJ found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the overall record, which did not reveal back abnormalities that would interfere with work at the designated RFC.  AR at 21. First, the ALJ referenced two MRIs — one from April 2014 and another from July 2018 — to demonstrate an absence of significant changes in Plaintiff's back.[5]  *Id.*

Second, the ALJ found that Dr. Brenner's July 2016 treatment record reflected generally controlled pain that enabled Plaintiff to sit, stand, and use her strength within the RFC.  *Id.*  The ALJ relied on the following findings:  normal gait and 5/5 strength in Plaintiff's lower extremities; lack of indication that her obesity also affected her ability to walk or sit; ability to sit comfortably during the course of the examination; history of high blood pressure, but no complications or change to her hypertension medication; heavy menses and fibroids, though no significant complications from iron deficiency anemia; Plaintiff was "still doing ok" despite continued complaints of back pain; and no changes to her treatment plan.  *Id.* (citing *id.* at 503–05).

_____

[5]  Plaintiff argues that the ALJ improperly offered his own interpretation of the MRI.  ECF No. 22 at 14.  However, the ALJ simply recited the MRI findings that were prepared by physicians.  AR at 612–13, 675–76.

Third, the ALJ concluded that examinations in May, September, and December 2017 demonstrated that Plaintiff was managing her stable symptoms. *Id.* at 21–22.  At each examination, Plaintiff had normal gait and 5/5 strength in her lower extremities.  *Id.*  The ALJ acknowledged Plaintiff's allegation of pain but pointed to Dr. Brenner's notation that Plaintiff was "still doing ok" and "about the same" and Dr. Richard Badke's assessment that Plaintiff received "'great benefit' from narcotics in reducing pain and improving her ability to complete activities of daily living."  *Id.* (citing *id.* at 550–52, 573); *see also Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]" (citations omitted)).

The ALJ further cited Plaintiff's ability to sit through her examination without discomfort and to vacuum, opining that the foregoing activities and findings indicated that Plaintiff was capable of performing work at the RFC.  *Id.* at 22.  While "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability,'" *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)) (alteration in original), a claimant's testimony may be discredited "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting."  *Molina*, 674 F.3d at 1113 (citations omitted); *see also Orn*, 495 F.3d at 639 (citing *Burch*, 400 F.3d at 681; *Fair*, 885 F.2d at 603).

12

Even in cases where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citations omitted).

Plaintiff treats each of the ALJ's justifications as independent deficiencies that do not constitute clear and convincing reasons for discounting her symptom testimony. But the ALJ found the foregoing *collective* medical evidence concerning Plaintiff's physical impairments to be inconsistent with Plaintiff's testimony regarding the intensity, persistence, and limiting effect of her symptoms. Plaintiff relies extensively on *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), to challenge the ALJ's credibility analysis. In *Brown-Hunter*, the Ninth Circuit held that it is erroneous to make a "single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying 'sufficiently specific reasons' for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (some internal quotation marks and citation omitted). There, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' [courts] must have in order to review the ALJ's

decision meaningfully" to "ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.

Unlike the ALJ in *Brown-Hunter*, who did not identify the testimony she found non-credible, *see id.*, the ALJ in this case summarized Plaintiff's testimony regarding the persistence, frequency, and limiting effects of her impairments. AR at 21. He then detailed the evidence — including diagnostic tests and examination notes from 2016 and 2017 — that contradicted Plaintiff's testimony, as outlined above. *Id.* at 21–22.

At bottom, Plaintiff takes issue with the ALJ's characterization of the record. ECF No. 22 at 14–20. She appears to assume that the ALJ ignored evidence that was not addressed in the Decision and repeatedly accuses him of cherry picking evidence. *Id.* But "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citations omitted). Although Plaintiff clearly expected more thorough findings, the ALJ's discussion sufficiently demonstrates that he did not arbitrarily reject her testimony. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).

Plaintiff references select portions of the record and offers her competing interpretation in an effort to establish error. The ALJ, not the Court, is responsible for weighing evidence and resolving conflicts, however. *See Andrews*, 53 F.3d at

1039.  Where, as here, the ALJ did so and the record supports his conclusions, the conclusions should be upheld.  *See Hiler*, 687 F.3d at 1211.  This is so even if Plaintiff's interpretation of the evidence is rational.  *See Orn*, 495 F.3d at 630; *Ford*, 950 F.3d at 1154.

For these reasons, the ALJ articulated specific findings to support his conclusion that Plaintiff's testimony regarding her pain was not entirely consistent with the evidence in the record.  Because substantial evidence in the record supports the ALJ's credibility finding, the Court "may not engage in second-guessing."  *Thomas*, 278 F.3d at 959 (citation omitted).

**B.  The ALJ's Determinations As To The Medical Opinion Evidence**

Plaintiff also contends that the ALJ erred by finding persuasive the State agency medical consultants' opinions and failing to offer specific and legitimate reasons or persuasive reasons for rejecting Dr. Brenner's opinions.  ECF No. 22 at 23.

The regulations governing the evaluation of medical evidence were revised for claims protectively filed on or after March 27, 2017, so they apply here.  *See* 20 C.F.R. § 404.1520c.  Under the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s),[6] including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, to evaluate persuasiveness, the ALJ considers medical opinions or prior administrative findings from medical sources based on factors set forth in the regulations. *See* 20 C.F.R. § 404.1520c(a), (c). The most important factors are supportability and consistency,[7] but other factors to be considered include: the relationship with the claimant, specialization, and whether the source has familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. *See id.*

---

[6] Section 404.1513(a)(5) defines a prior administrative medical finding as:

> a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record.

20 C.F.R. § 404.1513(a)(5).

[7] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

For claims filed before March 27, 2017, the Ninth Circuit distinguishes the opinions of treating physicians, examining physicians, and non-examining physicians. *See Garrison*, 759 F.3d at 1012 (citation omitted). When a "treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (internal quotation marks and citations omitted).

The Ninth Circuit has yet to indicate whether these standards apply to the revised regulations.[8] However, while the regulations eliminate deference and the assignment of evidentiary weight to medical opinions and prior administrative findings, the ALJ must articulate "how [h]e considered" and "how persuasive [h]e find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(a)–(b). In doing so, he must explain "how [h]e considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" but need not discuss the remaining factors. 20 C.F.R. § 404.1520c(b)(2). At a

---

[8] The Court need not decide whether the "specific and legitimate reasons" standard continues to govern at this time because it is not dispositive of the issues in this case.

minimum, the revised regulations appear to require the ALJ to provide an adequate explanation regarding his treatment of the records so that courts may ascertain whether substantial evidence supports his decision. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5853, 2017 WL 168819 (Jan. 18, 2017) ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.").

With these principles in mind, the Court turns to the medical opinions at issue.

### 1.   Dr. Brenner

Plaintiff argues that the ALJ failed to supply any proper reasoning to find Dr. Brenner's June 2020 opinion unpersuasive, in violation of the applicable regulations.  ECF No. 22 at 24.  The Commissioner counters that the ALJ appropriately considered and addressed supportability and consistency.  ECF No. 27 at 34–36.

Dr. Brenner completed a Medical Source Statement in June 2020, which is the opinion referenced in the Decision.  AR at 22 (citing *id.* at 1120–24).  He indicated that Plaintiff could not engage in competitive work and would miss work more than three days per month.  *Id.* at 22, 1120–24.  He also stated that his

opinion of Plaintiff's limitations has been the same since he began treating her. *Id.* The ALJ concluded that Dr. Brenner's opinion was not well supported and was inconsistent with the record. *Id.* at 22. To buttress this conclusion, the ALJ referenced Dr. Badke's examination notes regarding the "great benefit" provided by narcotics in reducing pain and improving Plaintiff's ability to engage in activities of daily living; her normal gait; her 5/5 strength in her lower extremities; her ability to sit through an examination without discomfort; and her ability to vacuum, albeit with resulting weakness. *Id.*

### a.   Supportability Factor

Plaintiff claims that the ALJ failed to offer any explanation for his conclusion that Dr. Brenner's opinion was not well supported, *i.e.*, the supportability factor. ECF No. 28 at 11. The Commissioner compares Dr. Brenner's June 2020 opinion with his July 2016 and May 2017 examination notes, arguing that the ALJ reasonably concluded that Dr. Brenner's extreme limitations were unsupported by his own objective findings.[9] ECF No. 27 at 34–35.

---

[9] Had the ALJ identified conflicts between Dr. Brenner's examination notes and his June 2020 opinion, they may have constituted specific and legitimate reasons that are supported by substantial evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician[.]" (citations omitted)); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict between a treating physician's opinion and treatment progress notes is a specific and legitimate reason to reject the treating physician's opinion).

However, the ALJ made no such findings with respect to the June 2020 opinion. The Court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citations omitted); *see also Brown-Hunter*, 806 F.3d at 492 (explaining that courts are constrained to review reasons asserted by the ALJ). By failing to articulate any reasoning as to the supportability factor, the ALJ erred. *See* 20 C.F.R. § 404.1520c(b)(2).

### b.   Consistency Factor

Plaintiff acknowledges that the ALJ offered reasons for the consistency factor, but she deems them deficient. ECF No. 28 at 11–12. As before, Plaintiff disagrees with the ALJ's interpretation of the evidence. But the ALJ weighs evidence and resolves conflicts, not the Court. *See Andrews*, 53 F.3d at 1039. The record supports the ALJ's conclusion regarding the consistency factor and his reasoning comports with the revised regulations and constitutes specific and legitimate reasons supported by substantial evidence. The ALJ's conclusion should therefore be upheld as to the consistency factor. *See Hiler*, 687 F.3d at 1211.

### 2.    State Agency Consultants — Drs. W. Matsuno And H. Han

Drs. Matsuno and Han opined that Plaintiff "could perform light work except she could never climb ladders, ropes, or scaffolds; she could occasionally balance, stoop, kneel, crouch, or crawl." AR at 23 (citing *id.* at 70–80, 84–95). The ALJ concluded that their "opinions are persuasive because they are well supported and generally consistent with the overall record." *Id.*

Plaintiff challenges the ALJ's conclusion because mentioning supportability and consistency, without any explanation, is inadequate. ECF No. 22 at 23; ECF No. 28 at 14. Indeed, in a single paragraph, the ALJ merely summarized Dr. Matsuno's opinion, noted that Dr. Han identified the same limitations as Dr. Matsuno, and concluded that the opinions were persuasive. He did not discuss independent clinical findings or other evidence in the record, nor offer findings. The Commissioner supplements the ALJ's conclusory statement with the rationale she presumes the ALJ intended, including multiple citations to the record. ECF No. 27 at 31–32. Again, the Court cannot review reasoning that the ALJ did not offer. *See Bray*, 554 F.3d at 1225; *Brown-Hunter*, 806 F.3d at 492. Accordingly, because the ALJ did not provide *any* analysis with respect to Drs. Matsuno's and Han's opinions, he erred. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will *explain how we considered the supportability and consistency factors* for a medical source's medical opinions or prior administrative medical findings in your

determination or decision." (emphasis added)).  This is true whether the plain terms of the revised regulations or the "specific and legitimate reasons supported by substantial evidence" standard applies.

In sum, the Court AFFIRMS the Decision as to (1) the credibility determination because the ALJ provided clear and convincing reasons for not fully crediting Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms and (2) the ALJ's determination that Dr. Brenner's opinion was unpersuasive based on the consistency factor because the ALJ provided specific and legitimate reasons supported by substantial evidence.  The Decision is REVERSED as to:  (1) the ALJ's determination that Dr. Brenner's opinion was unpersuasive based on the supportability factor because the ALJ failed to articulate any reasons for his conclusion and (2) the weight given to Drs. Matsuno's and Han's opinions because the ALJ failed to provide any analysis regarding his conclusion.  The Court REMANDS the action for further proceedings consistent with this Order.  *See Trevizo*, 871 F.3d at 682.

//

//

//

//

//

22

## CONCLUSION

For the reasons set forth herein, the Decision is AFFIRMED IN PART AND REVERSED IN PART.  This case is REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:      Honolulu, Hawaiʻi, February 16, 2022.



Jill A. Otake
United States District Judge

Civil No. 21-00130 JAO-RT, *Moiha v. Kijakazi*; ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS